UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case no. 00-6003-Cr-Dimitrouleas

UNITED STATES OF AMERICA,

 Plaintiff,

v.

MITCHELL STEIN,

 Defendant.

_____/

NIGHT BOX
FILED

MAR 2 2 2000

CLARENCE MADDOX
CLERK, USDC / SDFL / FTL

## MOTION FOR DOWNWARD DEPARTURE PURSUANT TO SENTENCING GUIDELINES SECTION 5K2.0

COMES NOW the Defendant, by and through undersigned counsel, and files this motion for a downward departure pursuant to Sentencing Guidelines Section 5K2.0 and states:

Defendant has been convicted, upon his guilty plea, of willfully failing to file a 1995 income tax return, <u>a misdemeanor</u> under 26 U.S.C. § 7203. Historically (i.e., before enactment of the Sentencing Guidelines), almost all of offenders so convicted received probation or a combination of probation and community service. The versions of the Sentencing Guidelines applicable to the Defendant recognize that, but express an intent that a higher percentage of offenders receive a sentence which includes some period of incarceration. Defendant is just above the "tax loss" amount ($47,416.00 vs. $40,000.00) which would allow this Court to impose a sentence without any period of imprisonment.

Defendant's history of failing to file tax returns timely, is not contested. Indeed, however, that very history also reflects a record of cooperative interaction when contacted by the IRS and

1



payment of the full liability shown on delinquent tax returns.[1] The First Circuit has ruled that the intention to make late payment and not deprive the IRS of taxes, could remove a tax case from the "heartland." *United States v. Brennick*, 134 F.3d 10 (1st Cir. 1998).

Defendant seeks a downward departure under § 5K2.0 of the Sentencing Guidelines. The downward departure sought is minimal; i.e., to allow the Court to sentence the Defendant to a term of home confinement in lieu of any period of incarceration. The defendant presently scores at a total offense level of 11 with a criminal history category of I, placing him in the lowest range of Zone C which requires the Court to sentence the defendant to at least 4 months in imprisonment. A reduction by one level would allow this Court to sentence the defendant within Zone B and allow the defendant to serve his time in either community confinement or home detention.

Section 5K2.0 allows for a departure on case specific facts when mitigating factor(s) not adequately taken into consideration by the Sentencing Guidelines are present. 18 U.S.C. § 3553(b). Courts employ the four-prong test established by *Koon v. United States*, 518 U.S. 81 (1996). The four part test established in *Koon, supra,* set out the following questions:

 (1) What features of the case make it outside the guidelines' "heartland" and make it special or unusual?

 (2) Has the Commission forbidden departure based on those features?

 (3) If not, has the Commission encouraged departure based on those features?

 (4) If not, has the Commission discouraged departure based on those features?

---

[1] The only reason there is a "tax loss" under the Sentencing Guidelines in this case is because the Guidelines determine the loss by excluding payments made after the due date of a return.

Defendant will proffer witnesses and other evidence at the time of sentencing which will demonstrate the following:

a) The defendant filed his tax returns, admittedly late, and paid the entire amount due, during the investigative process.

b) The defendant is a self-employed insurance salesman who works from his house. Incarcerating him will delay him from paying the IRS the penalties and interest due to be imposed, the defendant will lose clients of his insurance business, and the incarceration will exact a substantial hardship on him and his family. Essentially, the defendant's income maintains the family's homestead and pays for his daughter's education at the University of Arizona where she receives her education in a special environment because of severe learning disabilities.

c) The defendant's wife is suffering from cancer. His personal support of her is incredible. He attends all her medical appointments with her and provides extreme emotional support for her. Her oncologist will provide testimony establishing that an increase in stressors will diminish her ability to resolve the cancer through chemotherapy. The importance of the defendant's presence to provide emotional, financial, and moral support to his wife under the particular facts of her condition is a special circumstance of this case. A letter from her oncologist is attached

d) The defendant has been treated by a psychiatrist for approximately 10 years for mental health problems. The Commission in Sentencing Guideline § 5K2.13 has recognized that diminished capacity is a ground for downward departure and the extent of the diminished capacity affects the amount a court should use to calculate the downward departure. In the instant case, the amount of downward departure requested is not significant. A letter from his psychiatrist is attached.

e) The defendant also suffers from physical health problems resulting from an automobile accident. His general prognosis is poor with a likelihood that he will continue to have

3

problems in the future. In addition he may also need additional surgery. A letter from his surgeon is attached.

Accordingly, the defendant submits that while not any of these grounds standing alone may establish sufficient grounds to take his case out of the heartland, all these grounds considered together establish in their totality sufficient grounds to warrant a departure. The departure requested is one level which would allow this Court to sentence the defendant to home confinement arrest instead of incarceration by imprisonment.[2]

WHEREFORE, the defendant moves this Honorable Court to grant a downward departure for the reasons stated.

          **LAW OFFICES OF GARY KOLLIN, P.A.**
          8211 W. Broward Blvd. Suite 420
          Fort Lauderdale, Florida 33324
          Telephone: (954)723-9999
          Telefax: (954) 475-2279

          By: _____
              **GARY KOLLIN**
              Fla. Bar No. 282431

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing with attachments was mailed this 22 day of March, 2000, to Assistant United States Attorney Lynn Rosenthal, 299 E. Broward Blvd., Ft. Lauderdale, FL 33301 and to Georgeann Stanley, US Probation Officer, 299 E. Broward Blvd., Room 409, Ft. Lauderdale, FL 33301-1168.

          _____
          GARY KOLLIN, ESQ.

---

[2] The defendant also submits a letter from his Rabbi attesting to his character.


NEUROLOGICAL SURGERY ASSOCIATES

- F. GARY GIESEKE, M.D. - F.A.C.S.
- MATTHEW R. MOORE, M.D.
- JOHN A. COATS, M.D.



**FEBRUARY 28, 2000**

**TO WHOM IT MAY CONCERN:**

**RE: MITCHELL STEIN**
**SS#: 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**

I have reviewed this patient's chart which is quite voluminous, and he was involved in a vehicular accident with continuing neck pain and required extensive surgery at North Broward Medical Center on 9/14/92 at which time he had an anterior cervical discectomy, fusion and plating at C5-6 and C6-7. He was followed in our office after this and since then has been evaluated by other physicians and is having ongoing problems with his neck and upper extremities, thus his general prognosis is poor as he will likely have continuing problems in the future and may well require additional surgery in the future.

F. Gary Gieseke, M.D.

FGG:wjr

## Phillip A. Caruso, M.D., FACOG, FACS

DIPLOMATE OF THE AMERICAN BOARD OF OBSTERICS AND GYNECOLOGY
BOARD CERTIFIED GYNECOLOGIST ONCOLOGIST

1815 East Commercial Boulevard ☐ Suite 206 ☐ Fort Lauderdale, Florida 33308 ☐ Telephone (954) 771-8888

November 2, 1999


Mr. Gary Kollin
8211 West Broward Boulevard, #420
Plantation, FL   33324

                                        Re:   Kathy Stein

Dear Mr. Kollin:

   I would like to take the opportunity to familiarize you with the medical status of my patient, Kathy Stein.

   Mrs. Stein was found to have an early invasive carcinoma of the uterine cervix for which she underwent major surgery in November of 1995.

   Subsequently, she has returned to the operating room on five occasions and was treated with topical vaginal chemotherapy. Most recently she was found to have a persistent vaginal precancerous lesion and has been referred for intracavitary (vaginal) radiation brachytherapy. Her immunological defense mechanisms are severely compromised and her successful response to radiation therapy will be enhanced by a reduction in her stress level. Her husband continues to render an extremely important supportive role.

   I sincerely hope you can alleviate Kathy's stress by resolving their IRS matter in an fair and resonable manner.

Cordially,

Phillip A. Caruso, M.D.

PAC:dw

# TEMPLE
# KOL AMI

Rabbi Michael A. Schadick
Cantor Mark C. Goldman
Carole Ratner, Administrator

Dr. Sheldon J. Harr
Senior Rabbi

Tirza Arad, Temple Educator
Norma Cahen, Early Childhood Director
Debra Rosenzweig, Day School Director



*Honoring Our Past . . . Securing Our Future*

October 27, 1999

Mr. Gary Kollin
8211 West Broward Blvd.
Suite 420
Plantation, Florida 33324

Dear Mr. Kollin,

Please accept this letter in reference to MITCHELL STEIN.

I have known Mitch and his family for well over a dozen years. He, his wife Kathy, and his children Megan and Joshua, have been active, involved and supportive members of our Congregation throughout all of those years, and continuing to and through this time as well.

I am aware that Mitch is facing federal criminal tax charges. I would likke to speak on their behalf.
Mitch and Kathy Stein are among the most sincere, kindest and giving people I know. They would never purposely hurt or harm anybody or anything. They care for and about others, and their actions within our community bespeak of their basic decency and goodness.

Mitch has been very active in Temple. Supportive of his children and his wife in their own involvement, he has been a regular attender at Sabbath Services. Assisting in a variety of ways and helping out in whatever manner he is asked, from participation in our Brotherhood to ushering on the High Holy Days, Mitch is a very valuable member of the Congregation. He has taken his faith and his heritage seriously and has translated that into activity in and support of his Temple, which means so much to him.

Mitch and Kathy have gone through a great deal of stress and trauma, particularly over these last number of years. Kathy continues to actively battle cervical cancer. Mitch's physical problems (he is often in pain), along with other family situations, have brought him to the point of significant depression.

Nonetheless, they are both productive and meaningful persons within our community. I would, without hesitation, stand by Mitch and his family and unequivocally vouch for him!

Very sincerely yours,

Dr. Sheldon J. Harr
Senior Rabbi

**Abbey Strauss MD PA**
1050 NW 15th St., #207
Boca Raton, Florida 33486
Phone 561-394-6110
Fax 561-394-6544
Email astrauss@gate.net

November 3, 1999

Gary Kollin, Esq.
8211 W. Broward Blvd, #420
Plantation, Fl, 33324-2741

Re: Mitch Stein

Dear Mr. Kollin,

Mr. Stein has been my patient for many years. Several real factors about his personality are quite evident.

1. He is a hard worker and will do what ever is needed to give his friends and clients an honest effort to meet his commitments to them. He is very devoted to his family.
2. He cannot handle emotional challenges well. But rather than open up to them, he holds them in, and over the years he has developed a reasonably functioning ability to avoid emotions. He will act as needed to tend to issues, but this is mechanical to a large degree.
3. When faced with some hostile manner, he will procrastinate or minimize. There is a genuine need to avoid uncomfortable issues, even if ultimately he does address them. He also tries to convert issues into levels or a pace of interaction that suits his psychological needs – this is most probably his character style, and reflects his needs to minimize issues. This is evident, for example, in the ways he is slow to provide attorney's with background information. The urgency of an uncomfortable issue can overwhelm him, even to the point of his saying death would be better than life, because it makes him feel under attack. That is why, to a large degree, why he does not practice law – it is too confrontational.
4. It is my opinion that he is not at all a malicious or person who tries to ignore responsibility, but rather that at some times he is unable to deal with issues that relate to himself. It is almost a shame factor, an embarrassment, so to speak, that he cannot manage an issue. So he knows he will have to do the task, but he rationalizes another plan that allows the emotional discomfort to dissipate without denying his ultimate responsibility. From what I know of the history of his issues, this was the pattern that was operating.

Sincerely,

Abbey Strauss MD