UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6003-CR-DIMITROULEAS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MITCHELL STEIN,

    Defendant.
_____/



FILED by _____ D.C.

FEB 15 2002

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

## GOVERNMENT'S SENTENCING POSITION

The United States of America files this, its position as to the sentencing of the defendant, Mitchell Stein. Although the defendant is facing a guideline sentence of 3-9 months pursuant to U.S.S.G. § 7B1.4, the United States submits that a sentence in that range is inadequate. The United States submits that the statutory maximum of 12 months is the appropriate sentence. Insofar as Chapter 7 of the Guidelines is merely advisory policy statements and not mandatory guidelines, the United States moves this Court to consider the blatant violations of the defendant and to sentence him to the maximum sentence authorized by law.

### Facts

On February 2, 2000, the defendant pled guilty to a misdemeanor crime of failure to file income tax returns. The defendant admitted that he had failed to file for the years



1993-1995. At sentencing, the defendant admitted that he was wrong in not filing his tax returns. He further stated:

> I have learned a serious lesson from my experience of being prosecuted for this misdemeanor, I feel ashamed and am embarrassed that my wife and children have to suffer as a result of my shortcoming....

On April 17, 2000, this Court sentenced the defendant to three years probation, the first six months as home detention. Shortly after his sentencing, the defendant met with his assigned probation officer and was instructed that he was required to file and pay his taxes quarterly. He did not do so. The home confinement condition was completed in November 2000. Again, the defendant was reminded that he had to file and pay his taxes quarterly. Realizing that the defendant had not been filing or paying his taxes as required, the probation office gave the defendant until December 5, 2000 to comply. At that time, the defendant was sent a letter on non-compliance and reinstructed that he had to file his returns and pay his taxes.

On January 10, 2001, during a home visit, the defendant refused to allow the probation officer to review any employment records and told the probation officer "it is none of the government's business.....I'd rather die than give the government one penny." Finally, after another meeting with his probation officer, the defendant met with the IRS and was given financial documents and forms to complete so that an assessment of tax liability could be competed.

On April 3, 2001 the defendant was again reminded to file and pay his taxes quarterly. The defendant again failed to comply, but requested an extension until May 1, 2001.

On May 1, 2001, the defendant informed his probation officer that he had sent his tax returns and a check to the IRS. Moreover, the defendant presented the probation officer a copy of the tax form and check he allegedly sent to the IRS.

In July, August, September and November 2001, the defendant was again reminded of his obligation to file and pay his taxes quarterly. Although the probation office though the defendant was only in arrears since May 2001, in November 2001, during a conversation with the IRS, the defendant's probation officer discovered that the defendant had not paid his taxes as had been represented by the defendant in May. Moreover, the defendant owed over $104,000 in back taxes owed since 1993. When confronted with this revelation, the defendant nervously stated that the records must not be up to date, and further stated " why should I have to pay any money when the government is wasting all of that money in Afghanistan." Finally, the defendant admitted that he had not sent his tax returns or a check to the IRS in May as originally represented. The defendant continues to violate not only the conditions of his probation, but his legal obligation to file and pay taxes.

## LAW

In this case the defendant is facing a guideline sentence of 3-9 months pursuant to U.S.S.G. § 7B1.4. However, the United States submits that a sentence in that range is inadequate. The United States submits that the statutory maximum of 12 months is the appropriate sentence. Insofar as Chapter 7 of the Guidelines is merely advisory policy statements and not mandatory guidelines, the government moves this Court to impose the maximum sentence authorized by law.

Unlike sentencing guidelines, sentences for violations of probation are covered by

policy statements. Chapter 7 of the United States Sentencing Guidelines relating to violations of probation and supervised release, begins with an explanation that "at this time, the Commission has chosen to promulgate policy statements only." Sentencing guidelines for violations of probation are still forthcoming.

The Eleventh Circuit, as well as numerous other circuits have addressed the issue of whether Chapter 7 guidelines are mandatory or simply advisory. All have held that they are simply advisory. In United States v. Thompson, 976 F.2d 1380 (11th Cir. 1992) in response to the question, "Specifically, do these policy statements [Chapter 7] constitute binding authority or are they merely advisory?" the Eleventh Circuit held, "Following the lead of the Third, Fifth, and Sixth Circuits, see United States v. Blackston, 940 F.2d 877, 893 (3d Cir.), cert. denied, 502 U.S. 992, 112 S.Ct. 611, 116 L.Ed.2d 634 (1991); United States v. Headrick, 963 F.2d 777 (5th Cir.1992); United States v. Cohen, 965 F.2d 58 (6th Cir.1992), we hold that such policy statements are advisory."

In United States v. Hefierka, 83 F.3d 357 (11th Cir. 1996), the Eleventh Circuit stated, "We have unequivocally held that the Chapter 7 policy statements are merely advisory, i.e., they are not binding. United States v. Thompson, 976 F.2d 1380, 1381 (11th Cir.1992)." In the Hefierka case, the appellant argued that the district court improperly imposed a sentence in excess of the range specified in U.S.S.G. § 7B1.4(a). But the Court found that "Chapter 7 of the Sentencing Guidelines contains policy statements which provide ranges of imprisonment that a court may follow when revoking probation or supervised release. See U.S.S.G. Ch. 7, Pt. A, intro..... And further "the court held that because Chapter 7 is merely a policy statement and not a guideline, sentencing courts are not bound by it."

The Court stated:

> The plain language of § 3553 indicates that the sentencing court, in imposing a sentence upon revocation of a defendant's supervised release, must at least consider the sentencing range prescribed by the Sentencing Commission's policy statements. The heading and text of subsection (b) make clear that its mandatory language refers only to those situations in which sentences are imposed pursuant to guidelines. Because the Chapter 7 sentencing range is a mere policy statement and not a guideline (in the sense of binding courts), the language in subsection (b) does not apply to sentencing under Chapter 7. Indeed, the interpretation pressed by appellants would not make practical sense. The Sentencing Commission specifically stated in Chapter 7 that it issued advisory policy statements rather than guidelines for sentences imposed upon the revocation of supervised release in order to provide district courts with greater flexibility. *Milano*, 32 F.3d at 1503 (citing (Cite as: 83 F.3d 357, *361) U.S.S.G. Ch. 7, Pt. A(3)(a)). It is against this backdrop that Congress amended § 3553. Congress understood that courts have consistently distinguished guidelines from mere policy statements and nothing in the statute persuades us that it intended to change the meaning of these words. Accordingly, consistent with *Milano, Thompson*, and the reasoning set forth above, "we hold that, while the district court in this case was required to consider the Chapter 7 policy statements in determining [appellants'] sentence, the Court was not bound to apply the sentence set forth in section 7B1.4." *Milano*, 32 F.3d at 1503.

The Court in <u>Hefierka</u>, 83 F.3d 357, 362, went further to explain that the sentencing court is not required to give notice of its intent to exceed the Chapter 7 sentencing range." Insofar as Chapter 7 sentencing ranges are not mandatory guidelines and that it is within a court's "discretion to exceed that range, it follows that exceeding that range does not

constitute a "departure." See *United States v. Mathena*, 23 F.3d 87, 93 n. 13 (5th Cir.1994) ("A sentence which diverges from advisory policy statements is not a departure such that a court has to provide notice or make specific findings normally associated with departures under § 3553(b)."); *United States v. Davis*, 53 F.3d 638, 642 n. 15 (4th Cir.1995) ("It is well established that '[a] sentence which diverges from advisory policy statements is not a departure.'") (quoting *Mathena,* supra); *United States v. Blackston*, 940 F.2d 877, 893 (3d Cir.), *cert.* denied, 502 U.S. 992, 112 S.Ct. 611, 116 L.Ed.2d 634 (1991) ("When working with policy statements (as opposed to guidelines), the district court is not required ... to impose a sentence outside of the prescribed range ... by finding an aggravating factor that warrants an upward departure....").

In light of the extreme conduct of this defendant in violating the conditions of his probation and continuing to violate the law, the government recommends revocation of probation and imprisonment to the full extend permitted by statute.

           Respectfully submitted,

           GUY A. LEWIS
           UNITED STATES ATTORNEY

By: _____
LYNN D. ROSENTHAL
ASSISTANT UNITED STATES ATTORNEY
Fla. Bar No. 343226
500 East Broward Blvd
Suite 700
Fort Lauderdale, Florida 33394

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was hand delivered this 15th day of February, 2002 to Robert Berube, AFPD.

By: _____
LYNN D. ROSENTHAL
ASSISTANT UNITED STATES ATTORNEY